**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1959**

SOLOMON NURU,

        Petitioner,

    v.

MERRICK B. GARLAND, United States Attorney General,

        Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals.

Argued: October 27, 2020                   Decided: April 20, 2021

Before GREGORY, Chief Judge, and DIAZ and RICHARDSON, Circuit Judges.

Petition for review denied by unpublished opinion. Judge Diaz wrote the opinion, in which Chief Judge Gregory and Judge Richardson joined.

**ARGUED:** James Algernon Roberts, LAW OFFICE OF JAMES A. ROBERTS, Fairfax, Virginia, for Petitioner. Paul R. Perkins, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent. **ON BRIEF:** Joseph H. Hunt, Assistant Attorney General, Jeffrey Bossert Clark, Acting Assistant Attorney General, Cindy S. Ferrier, Assistant Director, Office of Immigration Litigation, Sunah Lee, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Solomon Nuru, an Ethiopian native and citizen, petitions for review of a Board of Immigration Appeals order dismissing his appeal of an Immigration Judge's ("IJ") decision ordering his removal.

Nuru argues that he wasn't removable because he has derivative asylee status as a beneficiary of an IJ's grant of asylum to his mother. But U.S. Citizenship and Immigration Services ("USCIS") terminated his mother's asylee status in 2013, which in turn terminated Nuru's derivative status. And although Nuru's mother was again granted asylum in 2018, that grant was based on a new asylum application that she filed in 2016.

Nuru didn't qualify for derivative asylee status when his mother filed her new asylum application because he was an adult at the time. And he didn't seek any other relief from removal. The IJ thus correctly found Nuru removable, and the Board properly affirmed. We therefore deny Nuru's petition for review.

I.

Nuru's mother came to the United States from Ethiopia in November 2003 and applied for asylum through USCIS's Asylum Office. The Asylum Office granted her application the following month. She subsequently petitioned for derivative asylee status for her minor children, one of whom was Nuru. The Department of Homeland Security ("DHS") granted these petitions, and fourteen-year-old Nuru was admitted to the United States in 2006.

Five years later, USCIS issued a Notice of Intent to Terminate Nuru's mother's grant of asylum, suspecting fraud in her 2003 asylum application. *See* 8 C.F.R. § 208.24(a)(1) ("[A]n asylum officer may terminate a grant of asylum made under the jurisdiction of USCIS if, following an interview, the asylum officer determines that . . . [t]here is a showing of fraud in the alien's application such that he or she was not eligible for asylum at the time it was granted."). USCIS terminated Nuru's mother's asylee status in 2013, which likewise terminated Nuru's derivative status. *See* 8 C.F.R. § 208.24(d) ("The termination of asylum status for a person who was the principal applicant shall result in termination of the asylum status of a spouse or child whose status was based on the asylum application of the principal."). Nuru's mother, Nuru, and Nuru's siblings were issued Notices to Appear and placed in removal proceedings. *See* 8 C.F.R. § 208.24(e) ("When an alien's asylum status or withholding of removal or deportation is terminated under this section, [USCIS] shall initiate removal proceedings.").

Nuru's proceedings began in Baltimore, Maryland, where he initially appeared together with his mother and siblings. Nuru's venue was later changed to Arlington, Virginia after he was arrested in Maryland and was subsequently taken into DHS custody in Virginia. Because Nuru's arguments on appeal are largely based on what occurred in his mother's proceedings, we start by describing both proceedings.

## A.

At her first hearing, Nuru's mother admitted the factual allegations in her Notice to Appear and conceded removability. She also requested a hearing to adjudicate her claims for relief from removal: asylum, withholding of removal, and relief under the Convention

3

Against Torture. But rather than filing an application for that relief, she first made the argument that Nuru makes on appeal.

Specifically, Nuru's mother argued that she didn't need to file a new application because the Asylum Office had referred her 2003 asylum application to the immigration court pursuant to 8 C.F.R. § 208.14(c).[1] The government responded that her application hadn't been referred, but was instead terminated by USCIS pursuant to 8 C.F.R. § 208.24(a)(1). Thus, the government argued, she was required to file a new application before her claims could be adjudicated.

The IJ agreed with the government, finding that the 2003 asylum application was terminated, not referred. The IJ found the following undisputed facts: (1) the Asylum Office granted Nuru's mother's asylum application on December 15, 2003; (2) she received a Notice of Intent to Terminate on November 24, 2011; (3) she attended a hearing during which USCIS terminated her asylum status; and (4) she never received a Notice of Referral.

"Based on the foregoing," the IJ explained, the 2003 application "was clearly terminated." ECF No. 54-2, at 157. And, the IJ reasoned, "[n]either the regulations nor the case law grants an alien the option to pursue a previously terminated asylum application in immigration court." *Id.* Instead, such an alien may reapply for asylum when placed into removal proceedings pursuant to 8 C.F.R. § 208.24(e). *Id.* (citing *Matter of A-S-J-*, 25 I. & N. Dec. 893 (B.I.A. 2012); *Qureshi v. Holder*, 663 F.3d 778 (5th Cir. 2011)). Thus, the

---

[1] 8 C.F.R. § 208.14(c) provides that, if an asylum officer doesn't initially grant asylum to an applicant, "the asylum officer shall deny, refer, or dismiss the application."

IJ concluded, if Nuru's mother desired relief from removal, she needed to file a new application.

Nuru's mother, together with her children, filed an interlocutory appeal of the IJ's decision.[2]  While the appeal was pending, Nuru's mother filed a new asylum application on behalf of herself and Nuru's sister, who was still a minor.  Several months later, the Board issued a written decision declining to exercise jurisdiction over the interlocutory appeal, reasoning that it didn't "fall within the limited ambit of cases" in which the Board deems it appropriate to do so.[3]  ECF No. 54-2, at 120.  The Board ordered that the record be returned to the IJ without further action.  Neither Nuru's mother nor any of her children petitioned for review of the Board's decision.

Twenty months later, the IJ issued an oral decision granting Nuru's mother's new asylum application.  The application, filed in 2016, requested asylum on both the grounds (and evidence) originally presented in her 2003 asylum application and, alternatively, on new grounds (and evidence) presented for the first time.  As the record before us doesn't include a transcript of the hearing, it's unclear upon which ground the IJ based his grant of asylum.  No one appealed the IJ's decision; thus, Nuru's mother regained asylee status in 2018.

---

[2] This included Nuru, as the appeal predated his arrest and the transfer of venue in his proceedings.

[3] The Board also noted that each respondent, including Nuru, had filed their own asylum applications with the immigration court and thus would be able to appeal if subject to an adverse order.

B.

Like his mother, Nuru admitted the factual allegations in his Notice to Appear and conceded removability. Specifically, Nuru conceded that (1) he's not a United States citizen or national; (2) he is an Ethiopian native and citizen; (3) he derived asylee status as a beneficiary of a Refugee and Asylee Relative Petition (I-730) approved on June 16, 2005; (4) he was admitted as an asylee on August 12, 2006; (5) his asylee status was terminated on August 14, 2013 because he was the dependent of an applicant whose asylee status was terminated; and (6) he remained in the United States beyond August 14, 2013 without authorization.

Two years later—while his mother's interlocutory appeal to the Board was pending—Nuru filed his own asylum application with the IJ. But he didn't pursue that application at his hearing. Instead, Nuru argued that he had regained his derivative asylee status because his mother's 2003 asylum application was referred to the immigration court and granted.

The IJ rejected Nuru's argument and held that he wasn't an asylee. The IJ reasoned that Nuru's derivative asylee status was terminated when his mother's status was terminated and that, under *Matter of A-S-J-*, the IJ didn't have jurisdiction to review that termination.[4] Further, the IJ specifically rejected Nuru's argument that 8 C.F.R.

_____

[4] A sister circuit has held that USCIS lacks statutory authority to unilaterally terminate an alien's asylee status. *See Nijjar v. Holder*, 689 F.3d 1077 (9th Cir. 2012). However, we don't have jurisdiction over this issue because Nuru didn't raise it to the IJ or the Board. *See* 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if the alien has exhausted all administrative remedies available to the alien as of

6

§ 208.14(c) required USCIS to refer Nuru's mother's 2003 asylum application to the immigration court after it terminated her asylum status in 2013. Thus, the IJ found, Nuru was properly in removal proceedings and could proceed with (or update) his own application for relief from removal. Nuru requested time to decide what he wanted to do, so the IJ continued the proceedings.

Nuru subsequently withdrew his asylum application and indicated that he didn't have an asylum claim. Accordingly, the IJ ordered Nuru removed to Ethiopia. Nuru appealed the removal order to the Board, where he continued to argue that his removal proceedings should be terminated because he regained derivative asylee status when his mother was granted asylum in 2018.

The Board affirmed the IJ and dismissed Nuru's appeal. The Board explained that Nuru's derivative asylee status was terminated when his mother's asylee status was terminated in 2013. The Board rejected Nuru's argument that his mother's 2003 asylum application had been "referred" and instead found that Nuru didn't qualify for derivative status when she filed her new application in 2016. Though Nuru was entitled to file his own asylum application, he chose to abandon his application and forgo any other relief from removal. Thus, the Board held, the IJ correctly found Nuru removable. Nuru timely petitioned for review of the Board's decision.

---

right."); *Massis v. Mukasey*, 549 F.3d 631, 638 (4th Cir. 2008) ("[A]n alien's failure to dispute an issue on appeal to the [Board] constitutes a failure to exhaust administrative remedies that bars judicial review."). Nuru also waived this issue on appeal by conceding (in his opening brief) that USCIS properly terminated his mother's asylee status. Appellant's Br. at 8, 11. We therefore express no opinion on this question.

7

## II.

On appeal, Nuru continues to argue that he has derivative asylee status because his mother's 2003 asylum application was referred to the immigration court in 2013 and thus must have been granted in 2018. We uphold a Board decision regarding a removal order unless it is manifestly contrary to law. *Gandziami-Mickhou v. Gonzales*, 445 F.3d 351, 354 (4th Cir. 2006).

The fundamental problem with Nuru's argument is that it's belied by the record in his mother's proceedings. Despite his mother's attempt to persuade the immigration court to consider her 2003 asylum application in adjudicating her claims for relief from removal, the IJ required her to file a new application for consideration instead. And there's no question that she filed a new asylum application in 2016—which served as the basis of her 2018 asylum grant. Because Nuru was over twenty-one years old when his mother filed her 2016 asylum application, he can't have obtained derivative asylee status when that application was granted.[5] *See* 8 U.S.C. § 1101(b)(1) (defining "child" for purposes of derivative asylee status as "an unmarried person under twenty-one years of age").

To the extent that Nuru is arguing that USCIS *should* have referred his mother's 2003 asylum application to the immigration court in 2013, that ship sailed when (1) no one petitioned for review of the Board's order denying the interlocutory appeal where Nuru's

---

[5] There's also no indication that Nuru's mother included Nuru in her 2016 application or has since petitioned for derivative asylee status on his behalf.

mother made that argument, and (2) no one appealed the IJ's decision granting Nuru's mother asylum on the basis of her 2016 asylum application.

As a respondent in his mother's proceedings at the time, Nuru could have petitioned for review of the Board's interlocutory order but failed to do so. And there's simply no legal basis for unwinding, remanding, or revoking his mother's later grant of asylum when no one appealed the IJ's decision in her case.[6]

\* \* \*

Because the record plainly contradicts Nuru's sole basis for contesting removability, we have no reason to disturb the Board's decision. Nuru's petition for review is therefore

*DENIED.*

---

[6] Nor is it clear that Nuru's mother would have been granted asylum in 2018 based on her 2003 asylum application, as her 2016 asylum application included grounds for asylum (and related evidence) that her 2003 asylum application didn't.